UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ASHLEY MARIE URBAN,

                         Plaintiff,

                                                                                                         Case # 16-CV-76-FPG

v.

                                                                                                         DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                        Defendant.
_____

      Ashley Marie Urban ("Urban" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. This Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

      Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 12. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

      On August 13, 2012, Urban protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 128-37. She alleged that she had been disabled since January 4, 2010 due to fibromyalgia, hypothyroidism, depression, battered persons syndrome, post-traumatic stress disorder ("PTSD"), and anxiety, mood, and substance abuse disorders. Tr. 134, 154. On January 31, 2014, a hearing was held before Administrative Law Judge Donald T.

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

1

McDougall ("the ALJ"). Tr. 32-75. At the hearing, Urban amended her alleged disability onset date to November 8, 2012. Tr. 34-35. On April 22, 2014, the ALJ issued a decision finding that Urban was not disabled within the meaning of the Act. Tr. 12-27. That decision became the Commissioner's final decision when the Appeals Council denied Urban's request for review on December 4, 2015. Tr. 1-6. Thereafter, Urban commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not this Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his

or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.  The ALJ's Decision

The ALJ's decision analyzed Urban's claim for benefits under the process described above. At step one, the ALJ found that Urban had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 14. At step two, the ALJ found that Urban has the following severe impairments: major depressive, anxiety, and bipolar disorders, PTSD, polysubstance dependence in early remission, migraine headaches, lumbago, obesity, and mild left ulnar neuropathy. Tr. 14-15. At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 15-17.

Next, the ALJ determined that Urban retained the RFC to perform light work[3] with additional limitations. Tr. 17-25. Specifically, the ALJ found that Urban can only occasionally maintain close concentration or attention to detail for extended periods of time, cannot perform high stress work, such as work with the general public or production line work, cannot be required to make workplace decisions, and can frequently use her hands. Tr. 17.

At step four, the ALJ found that this RFC prevents Urban from performing her past relevant work. Tr. 25-26. At step five, the ALJ relied on the VE's testimony and found that Urban can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 26-27. Specifically, the VE testified that

---

[3]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Urban could work as a file clerk, order filler, addresser, and cuff folder[4]. *Id.* Accordingly, the ALJ concluded that Urban was not "disabled" under the Act. Tr. 20.

**II.   Analysis**

Urban argues that remand is required because the ALJ's RFC determination is not supported by substantial evidence. ECF No. 10-1, at 17-25. Specifically, Urban asserts that the ALJ erred by relying on his own lay opinion to determine her physical limitations because the record lacked any medical opinion as to her physical abilities. *Id.* at 22-23.

RFC is defined as "what an individual can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). To determine a claimant's RFC "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)); 20 C.F.R. § 416.945(a). "An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations." *Desmond*, 2012 WL 6648625, at *5.

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). Thus, even though the Commissioner is empowered to make the RFC determination, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner

---

[4]   A cuff folder "folds cuffs preparatory to sewing cuffs to sleeves of knitted garments: Lays flat cuff on table and folds cuff in half or pulls tubular cuff over cone-shaped form and turns cuff half-way back, matching edges. Stacks folded cuffs." *See* Dictionary of Occupational Titles #685.687-014.

5

"may not make the connection himself." *Id.* (citation omitted); *Jermyn v. Colvin*, No. 13-CV-5093 (MKB), 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) ("[N]one of these medical sources assessed Plaintiff's functional capacity or limitations, and therefore provide no support for the ALJ's RFC determination."). Depending on the circumstances, like when the medical evidence shows only minor physical impairments, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *Wilson*, 2015 WL 1003933, at *21 (citation omitted).

Here, although the record contains medical opinions as to Urban's mental RFC (Tr. 362-67, 368-82, 383-85), the record lacks any medical opinion as to Urban's physical ability to engage in work at any exertional level on a regular and continuous basis in an ordinary work setting. There is no medical opinion regarding her capacity to sit, stand, walk, push, lift, and pull, which are necessary activities for light work. *See* 20 C.F.R. §§ 404. 1567(b), 416.967(b). In fact, the ALJ's decision specifically acknowledged that no physician had opined as to Urban's physical work-related limitations. Tr. 25. Yet the ALJ, who is not a medical professional, somehow found that Urban could perform light work and frequently use her hands. Tr. 17; *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the [SSA], must be careful not to succumb to the temptation to play doctor."). He made this finding despite Urban's allegations that pain interfered with her ability to stand and walk. *See, e.g.*, Tr. 47, 168, 170, 172.

A significant portion of the ALJ's decision summarizes the physical medical evidence of record, but these treatment notes merely contain bare medical findings and do not address how Urban's impairments affect her physical ability to perform work-related functions. Tr. 23-24. The ALJ was not permitted to render a common sense judgment about Urban's functional

capacity because these treatment notes contain complex medical findings (*see, e.g.*, Tr. 278, 282, 287, 289-91, 308-09, 396-98, 400-01, 433, 438, 511, 517, 532, 543, 547) and the ALJ found that Urban had multiple severe physical impairments (*i.e.* migraine headaches, lumbago, obesity, and mild left ulnar neuropathy).  *See, e.g.*, *Palascak v. Colvin*, No. 1:11-CV-0592 (MAT), 2014 WL 1920510, at *9 (W.D.N.Y. May 14, 2014) ("Given Plaintiff's multiple physical and mental impairments, this is not a case where the medical evidence shows 'relatively little physical impairment' such that the ALJ 'can render a common sense judgment about functional capacity.'") (citation omitted).

For the reasons stated, this Court finds that the RFC determination is not supported by substantial evidence because there is no medical source opinion as to Urban's physical functional capabilities.  Accordingly, remand is required.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3).  The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 7, 2017
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court